UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                    1:23-CR-00109 – JLS-MJR

                                             REPORT, RECOMMENDATION
                                             AND ORDER

      v.

ROBERT HERNANDEZ and
REINALDO SANCHEZ GONZALEZ,

         Defendants.



      This case has been referred to the undersigned by the Honorable John L. Sinatra, Jr. pursuant to 28 U.S.C. §636(b)(1) to handle non-dispositive discovery motions and to make a recommendation as to all suppression motions.

      Before the Court are pretrial motions brought by defendants Robert Hernandez and Reinaldo Sanchez Gonzalez including motions to suppress evidence and various discovery demands. (Dkt. Nos. 75; 76; 84). For the following reasons, it is recommended that defendants' motions to suppress be denied. The Court's decisions as to the various discovery demands of defendants and the Government are set forth in detail below.

### BACKGROUND AND PROCEDURAL HISTORY

      On June 26, 2024, a grand jury returned a Superseding Indictment charging defendants Robert Hernandez and Reinaldo Sanchez Gonzalez (a/k/a Delvis Mendoza) with the following offenses: (1) conspiracy to possess with intent to distribute 400 grams or more of a mixture and substance containing fentanyl and 100 grams or more of a mixture and substance containing heroin, in violation of Title 21, United States Code,

Section 846; and (2) possession with intent to distribute 400 grams or more of a mixture and substance containing fentanyl and 100 grams or more of a mixture and substance containing heroin, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), and Title 18, United States Code, Section 2. (Dkt. No. 44).

Defendant Hernandez filed omnibus pretrial motions seeking discovery and making several disclosure demands. (Dkt. No. 75). Defendant Sanchez Gonzalez also filed omnibus pretrial motions seeking to suppress evidence and making discovery and disclosure demands. (Dkt. No. 76). The Government filed a response to each of the defendants' motions and made cross-motions for reciprocal discovery. (Dkt. Nos. 77; 78).

The Court heard oral argument on defendants' motions on April 9, 2025. At that hearing, defendant Hernandez provided a standing affidavit (Dkt. No. 97), and counsel requested an opportunity to supplement defendant's pretrial motions in light of the standing affidavit. The Court granted defendant Hernandez's request. The Court considered defendant Sanchez Gonzalez's motions submitted for decision pending resolution of his co-defendant's motions.

On August 25, 2025, defendant Hernandez filed a supplemental motion seeking suppression of evidence recovered from his vehicle following a traffic stop and suppression of evidence gained from a "ping" warrant for a telephone number associated with him. (Dkt. No. 84). The Government filed a response in opposition to the supplemental motions. (Dkt. No. 85). The Court heard continued oral argument on defendant Hernandez's pretrial motions and scheduled an evidentiary hearing on the issues.

On June 18, 2025, the Court held an evidentiary hearing on defendant Hernandez's motion to suppress. The parties submitted post-hearing briefing on the issues (Dkt. Nos. 93; 94; 95) and post-hearing oral argument was held on September 16, 2025. At that time, the Court considered the matters submitted for decision.

## FINDINGS OF FACT

During an evidentiary hearing held on June 18, 2025, the Court heard testimony from Sergeant Joseph Reeves, Sergeant Eric Szkatulski, and Deputy William Granville of the Erie County Sheriff's Office. The testimony related to a traffic stop which occurred on April 28, 2023 during which a vehicle was seized and defendants Hernandez and Sanchez Gonzalez were arrested. Following the arrests, law enforcement obtained a warrant to search the vehicle and found a quantity of fentanyl and heroin contained inside it.

Sergeant Reeves testified that on April 28, 2023 he was contacted by Deputy Granville regarding a vehicle that was suspected of transporting narcotics. (Tr. 7).[1] The vehicle was described as a black Honda Odyssey minivan that was travelling from the New York City area to Erie County. (Tr. 7-8). Deputy Granville asked Sergeant Reeves to conduct a traffic stop if he was able to locate the vehicle and if he had probable cause to initiate a stop. (Tr. 8).

On that date, Sergeant Reeves was partnered with Sergeant Szkatulski in a marked patrol vehicle. (*Id.*). Sergeant Szkatulski is a K-9 handler who had a K-9 police dog with him. (Tr. 8; 31). After Sergeant Reeves spoke with Deputy Granville, Sergeant Szkatulski drove with Sergeant Reeves to a turnaround area on Interstate 90 westbound

---

[1] Citations to "Tr." refer to the transcript of the evidentiary hearing. (Dkt. No. 90).

near the Clarence rest stop. (Tr. 8). Deputy Granville, who was conducting surveillance with others in the area, maintained contact with the patrol car via phone multiple times throughout the day. (*Id*.). At some point, Sergeant Reeves "received an update that the suspected vehicle was passing the Pembroke exit of the 90," followed by another update "when the vehicle passed the rest stop in Clarence." (Tr. 9-10).

After these updates, Sergeant Reeves observed the vehicle traveling westbound on the I-90. (Tr. 10). He testified that, "[i]t was raining at the time, and the Honda minivan – they were operating their windshield wipers with no headlights activated, which is a vehicle and traffic law violation." (*Id*.). Sergeant Reeves specified that he recalled that it was raining on that date because the officers were using the windshield wipers on their own vehicle at the time. (*Id*.). Sergeant Szkatulski also observed the vehicle travelling westbound and using its windshield wipers without headlights on. (Tr. 34). Further, Sergeant Szkatulski recalled that it was raining and that he had wipers on in his own vehicle "so that [he] could observe the traffic." (*Id*.).[2]

Once the vehicle passed the patrol car and the officers observed the traffic violation, Sergeant Szkatulski and Sergeant Reeves initiated a traffic stop. (Tr. 12; 35). The operator of the vehicle pulled over to the shoulder of the highway. (*Id*.). Sergeant Szkatulski approached the driver side of the vehicle, while Sergeant Reeves approached the passenger side. (*Id*.). Sergeant Szkatulski asked the operator of the vehicle, later identified as Robert Hernandez, to step out and then asked him standard traffic stop questions, such as "[w]here they were headed, where they were coming from, when they

---

[2] The Government introduced into evidence a Uniform Traffic Ticket issued to Robert Hernandez. (Govt. Ex. 1). The traffic ticket corroborates that on April 28, 2023, at approximately 3:19 p.m., the driver of the Honda Odyssey vehicle committed a violation of New York Vehicle and Traffic Law Section 375(2)(A), described as "No Headlamps/Inclement." (*Id*., Tr. 12).

left, any stops along the way." (Tr. 36-39). During this exchange, which lasted "minutes," Sergeant Szkatulski testified that the driver appeared nervous and had rapid breathing. (*Id.*).

At the same time, Sergeant Reeves spoke with the passenger, who remained in the vehicle. (Tr. 16). The passenger was later identified as Reinaldo Sanchez Gonzalez. (Govt. Ex. 2). Sergeant Reeves testified that, as soon as he made contact with the passenger, the passenger "appeared extremely nervous." He recalled that the passenger's "chest was rising and falling pretty rapidly" and that as he spoke "his words were not clear." (Tr. 16.). Sergeant Reeves asked the passenger questions about his travel, such as "where they were coming from," "if they had made any stops," and "what time they left that morning." (Tr. 16-17). The conversation lasted about three or four minutes. (*Id.*).

After speaking to the occupants of the car, Sergeants Reeves and Szkatulski spoke to each other and identified "several inconsistencies" in the answers given by the driver and passenger. (Tr. 18; 39). For example, the driver stated that they had made a stop while the passenger said they did not stop. (*Id.*). Based on Sergeant Reeves' training and experience, two occupants in a vehicle who were travelling together for several hours would not give different answers to the questions posed. (*Id.*).

Based on the demeanor of the vehicle occupants, the inconsistent statements, and the information known about suspected narcotics trafficking, Sergeant Szkatulski decided to employ his K-9 dog "Bo" to conduct an exterior sniff around the vehicle. (Tr. 18-19; 38-40).[3] Upon approaching the car with Bo, Sergeant Szkatulski described the following

---

[3] Sergeant Szkatulski testified as to Bo's qualifications and training, including that he is trained to detect the odors or heroin, cocaine, and methamphetamine. (Tr. 40-42; 49).

events: "When we were at the rear of the vehicle, I noticed Bo showed some alert behavior. He had a head whip and he started bracketing odor. He continued to work the odor. […] Ultimately, […] he came to a final indication, at the rear passenger side fender/window area." (Tr. 42).[4]

Once Bo indicated, Sergeant Reeves informed Deputy Granville, who had "arrived on scene with multiple other unmarked vehicles." (Tr. 20). Officers from the Narcotics Unit then took over the stop and detained the occupants of the vehicle. (Tr. 45). Law enforcement transported the vehicle to the Sheriff's Office in the City of Buffalo. (Tr. 20). Deputy Granville then prepared an application for a warrant to search the vehicle and the person of Hernandez. (Tr. 61; Govt. Ex. 5). Erie County Court Judge Debra Givens signed the search warrant on the same date, April 28, 2023. (*Id.*).

The search warrant affidavit included information provided to law enforcement by a confidential informant, information about the traffic stop, and information about the K-9 sniff. (*Id.*). During the hearing, the Government disclosed that the affidavit contained two errors: (1) the statement that "Your affiant received information from a reliable confidential source;" and (2) the statement that "the confidential source(s) has observed Hernandez transport and distribute narcotics while inside [the vehicle] on numerous occasions." (Tr. 74-75, Govt. Ex. 5, pg. 1). As to the first error, Deputy Granville testified that the statement was not accurate because he never communicated with the confidential informant himself. (Tr. 63). Instead, he explained that when he wrote "your affiant" he meant the

---

[4] Sergeant Szkatulski executed a K-9 Affidavit affirming that K-9 Bo conducted a sniff on the exterior of the Honda Odyssey vehicle on April 28, 2023 during which Bo showed alert behavior near the rear bumper and "indicate[d] for the presence of narcotics on the rear passenger side window." (Govt. Ex. 4). Sergeant Szkatulski testified that the K-9 Affidavit contains a clerical error in that it states that he signed it on April 24, 2023, when the date he created and signed the affidavit was actually April 28, 2023. (*Id.*; Tr. 45).

investigative team more broadly, including FBI Special Agent Curtis Middlebrooks, who had provided him the information after receiving it from the confidential source. (Tr. 63; 69). As to the second error, Deputy Granville testified that although he recently learned that the statement was not accurate, he believed the statement to be accurate when he prepared the affidavit. (Tr. 64).

It is noted that after listening to and observing the demeanor of Sergeant Reeves, Sergeant Szkatulski, and Deputy Granville, the Court finds them to be wholly credible witnesses.

## CONCLUSIONS OF LAW

Both defendants seek suppression of all evidence obtained from the traffic stop and vehicle search occurring on April 28, 2023. Defendant Sanchez Gonzalez argues that law enforcement did not have reasonable suspicion to conduct a traffic stop or probable cause to search the car. (Dkt. No. 76-1, ¶¶ 6-20). Sanchez Gonzalez argues that all evidence gained from the unlawful stop and arrest, including a search of his cell phone, must be excluded as fruit of the poisonous tree pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963). (*Id.*).

Defendant Hernandez moves to suppress evidence obtained from the traffic stop on the basis that it was not raining at the time and that the stop was "pretextual and not based upon an actual traffic violation." (Dkt. No. 84, ¶¶ 18-25). Hernandez further argues that subsequent warrants issued authorizing a search the vehicle and a search of four cell phones contained in the vehicle should be suppressed as fruit of the poisonous tree, as well as for lack of probable cause. (*Id.*, ¶¶ 26-29.).

_Motion to Suppress Evidence Gained from Traffic Stop_

First, the Court must address whether defendants have standing to bring these motions to suppress. The Court concludes that defendant Hernandez has demonstrated standing, while defendant Sanchez Gonzalez has not.

Fourth Amendment rights attach only to places and things in which the individual challenging the search has "an expectation of privacy that society is prepared to consider reasonable." _O'Connor v. Ortega_, 480 U.S. 709, 715 (1987). "In evaluating [standing] claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized." _United States v. Osorio_, 949 F.2d 38, 40 (2d Cir. 1991). The burden is on the defendant to show that he has a reasonable expectation of privacy. _See Rawlings v. Kentucky_, 448 U.S. 98, 104 (1980); _Osorio_, 949 F.2d at 40 ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). This burden to establish standing "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." _United States v. Montoya-Eschevarria_, 892 F. Supp. 104, 106 (S.D.N.Y. 1995). Further, to be entitled to an evidentiary hearing, a defendant must make a preliminary showing of facts which, if proved, would necessitate the granting of the relief requested. _See United States v. Gillette_, 383 F.2d 843, 848-49 (2d Cir. 1967); _United States v. Pena_, 961 F.2d 333, 339 (2d Cir. 1992) ("an evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'").

Defendant Hernandez submitted an affidavit attesting that he was the driver of the Honda Odyssey vehicle which was stopped on April 28, 2023.[5] (Dkt. No. 97, ¶ 3). He further attests that the vehicle is a "family car" which is owned by his wife and which he drives on a regular basis. (*Id.*, ¶ 5). He claims a lawful right to privacy in the vehicle. (*Id.*, ¶¶ 7-8). Hernandez also attests that two cell phones seized from the vehicle (with associated telephone numbers ending in -9154 and -8086) belonged to him. (*Id.*, ¶¶ 10-11). From these allegations, the Court concludes that Hernandez has shown a reasonable expectation of privacy in the contents of the vehicle and the two identified cell phones. Further, counsel's argument that it was not raining, combined with a generous reading of the affidavit, shows that Hernandez has created a factual dispute as to whether he committed a traffic violation prior to being stopped by law enforcement. (*See id.*, ¶ 3 ("I was stopped for an alleged traffic violation while driving on the I-90 in Clarence, NY.")).

Defendant Sanchez Gonzalez, who was a passenger in the vehicle, has not filed an affidavit regarding the vehicle, the cell phones, or any other contents of the vehicle. Because Sanchez Gonzalez has made no showing that he had a reasonable expectation of privacy in the subject vehicle or seized cell phones, he does not have standing to bring a motion to suppress. *See United States v. Powell*, 21-CR-572, 2025 U.S. Dist. LEXIS 1111, at *3-4 (E.D.N.Y. Jan. 3, 2025) (finding that failure to submit an affidavit establishing a privacy interest in the subject cell phones precludes relief); *United States v. Arteaga*, 23-CR-334, 2024 U.S. Dist. LEXIS 206361, at *6-8 (E.D.N.Y. Nov. 13, 2024*)* (denying motion to suppress cell phone evidence because defendant failed to submit an affidavit in support of the motion, thus failing to establish standing to challenge the searches);

---

[5] It is noted that the Court accepted defendant Hernandez's affidavit over the Government's objections that it was unfiled and untimely under Fed. R. Crim. P. 47(d).

*United States v. Sykes*, 05-CR-6057, 2006 U.S. Dist. LEXIS 57774, at *28 (W.D.N.Y. July 31, 2006), *adopted by* 2006 U.S. Dist. LEXIS 67461 (Sept. 20, 2006) (denying motion to suppress where defendant failed to demonstrate standing to challenge the search of an automobile). However, although defendant Sanchez Gonzalez failed to establish standing and was not entitled to an evidentiary hearing on this motion, the following analysis shows that, even if he had done so, there is no basis for suppression.[6]

The testimony and evidence adduced at the hearing supports the finding that defendants were lawfully stopped after officers observed a traffic violation. "Traffic stops are presumptively reasonable under the Fourth Amendment if the officer has probable cause to believe that a traffic infraction has occurred." *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). When an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994). "In evaluating the validity of a stop, the Court must consider the totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8 (1989). "If an officer has observed a traffic violation, his actual motivation for stopping the vehicle is irrelevant to whether the stop is constitutionally reasonable." *Foreste*, 780 F.3d at 523.

Here, law enforcement had probable cause to believe that the operator of the Honda Odyssey vehicle had committed a traffic violation. Sergeant Reeves and Sergeant

---

[6] The Court rejects defendant Sanchez Gonzalez's assertion that because he was a passenger in the vehicle, rather than the driver, there was no reason to detain him following the traffic stop. The Supreme Court has held that it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other passengers, because drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *See Maryland v. Pringle*, 540 U.S. 366, 373 (2003); *see also Wyoming v. Houghton*, 526 U.S. 295, 304-305 (1999) (a car passenger […] will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing.").

Szkatulski offered credible testimony that it was raining when they observed defendant's vehicle travelling on Interstate 90 westbound without its headlights on.[7] They further testified that failure to use vehicle headlights while windshield wipers are in use due to rain constitutes a violation of New York vehicle and traffic law. Based on these observations, the officers had probable cause to effectuate a traffic stop.[8]

Further, extension of the traffic stop for additional investigation was reasonable under the circumstances. Authority for making a traffic stop ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop"). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop […], [but] he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* However, "a traffic stop may be extended for investigatory purposes if an officer develops a reasonable suspicion of criminal activity supported by specific and articulable facts." *Foreste*, 780 F.3d at 524. Reasonable suspicion must be supported by

---

[7] Indeed, defendant failed to introduce any evidence controverting these facts at the hearing.

[8] The officers also testified that they were conducting surveillance in the area looking for defendant's vehicle because it was known to be travelling westbound and, based on information gained from a confidential source, was suspected to be transporting narcotics from New York City to the Buffalo area. Although defendant argues that the stop was pretext for law enforcement to investigate the suspected drug trafficking, the law is clear that an officer's actual motivation is irrelevant where a traffic violation has been observed and the stop is constitutionally reasonable. *See Foreste*, 780 F.3d at 523 (citing *Whren*, 517 U.S. 813); *see also United States v. Gomez*, 877 F.3d 76, 93 n.27 (2d Cir. 2017) ("a pretextual stop and reasonable suspicion are not mutually exclusive; an officer may conduct a pretextual stop based on a traffic violation and then […], extend the stop if the officer develops reasonable suspicion based on the actions of a driver or passenger either (i) before the stop, or (ii) during traffic-related processing of the stop.).

articulable facts that criminal activity may be afoot. *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013).

Here, the Government has established that the officers possessed reasonable suspicion of ongoing criminal activity to extend the stop for investigatory purposes. After stopping the vehicle and speaking with defendants briefly, Sergeant Reeves and Sergeant Szkatulski observed that defendants were displaying signs of extreme nervousness, including rapid breathing and unclear speech. There were also inconsistencies between the answers provided by each defendant as to their travel plans and stops that day. *See United States v. Peterson*, 100 F.3d 7, 11 (2d Cir. 1996) (finding reasonable suspicion where officers "noted the inconsistency in [the defendant's] statements as to his address and observed his apparent nervousness"). The officers also possessed knowledge that defendants may have been travelling to Buffalo for the purpose of transporting narcotics. As a result of this knowledge and his own observations, Deputy Szkatulski employed K-9 Bo, to conduct a sniff test of the exterior of the vehicle. Reasonable suspicion supported the extension of the stop to conduct a K-9 search. *See United States v. Zayas*, 22-CR-178, 2022 U.S. Dist. LEXIS 202701, at *29-30 (S.D.N.Y. Nov. 7, 2022) (finding that investigative knowledge combined with nervous behavior of defendant supported reasonable suspicion and extension of traffic stop for K-9 search). Probable cause for arrest and seizure of the vehicle arose when the K-9 showed "alert behavior" on the rear bumper of the car and on the rear passenger side window, indicating the possible presence of narcotics.[9]

---

[9] The date error in Sergeant Szkatulski's K-9 Affidavit does not affect this analysis. Sergeant Szatulski credibly testified that the described events occurred on April 28, 2023 and the alternate date contained in one portion of the affidavit was a mere clerical error.

For these reasons, the Court finds that the initial stop of vehicle and the extension of the stop for investigatory purposes was lawful. As a result, there is no basis for suppression of evidence. Accordingly, the Court recommends that defendants' motions to suppress evidence gained or derived from the traffic stop on April 28, 2023 be denied.

*Motion to Suppress Search Warrant Evidence*

Next, defendants move to suppress evidence obtained from several search warrants executed in this case, namely: (1) a cellular telephone "ping" warrant, (2) a warrant to search the Honda Odyssey vehicle and person of defendant Hernandez; and (3) a warrant to search the contents of four Apple iPhone cellular telephones. Each of the challenged warrants is discussed below.

Defendants Hernandez and Sanchez Gonzalez sought production of the applications supporting each of the search warrants. Following defendant Hernandez's submission of a standing affidavit relevant to the subject vehicle and the subject cellular phones, the Government agreed to turn over to defendant Hernandez the sealed search warrant applications, subject to a protective order. Defendant Hernandez supplemented his suppression motions based on that production. The Government has declined to provide the warrant applications to defendant Sanchez Gonzalez on the basis that he has failed to establish standing over any of the items or places searched pursuant to the warrants. The Court agrees that defendant Sanchez Gonzalez has shown no entitlement to the applications. *See United States v. Cobb*, 544 F. Supp. 3d 310, 337 (W.D.N.Y. 2021) (holding that absent a showing of a legitimate expectation of privacy in a search location, a defendant is not entitled to search warrant applications). Nor has defendant Sanchez

Gonzalez established standing the challenge the search warrants. *See Osorio*, 949 F.2d at 40.

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238 (internal citations omitted). The probable cause analysis is based on the totality-of-the-circumstances, with the task of the issuing magistrate to "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him […] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Gates*, 462 U.S. at 238. Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). To that end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

The Supreme Court has held that a defendant is entitled to an evidentiary hearing with respect to the validity of a search warrant only if they can make a substantial preliminary showing that: (1) the warrant affidavit contained a false statement; (2) the false statement was included intentionally or recklessly; and (3) the false statement was

integral to the probable cause finding. *Franks*, 438 U.S. at 155-56. In other words, to justify a *Franks* hearing "a defendant is required to show: (1) 'that there were intentional and material misrepresentations or omissions' in the warrant affidavit, and (2) that the 'alleged falsehoods or omissions were necessary to the … probable cause finding.'" *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (quoting *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003)). Further, the Second Circuit has held that "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

### 1. *Vehicle Warrant*

After defendants were arrested and the Honda Odyssey vehicle was impounded, a warrant to search the vehicle was issued by Erie County Court Judge Debra Givens on April 28, 2023. The warrant application was made by Deputy Granville based on his investigation of the suspected narcotics trafficking and the events which occurred during the traffic stop.[10] Defendant Hernandez moves to suppress evidence seized from the vehicle on the basis that the search warrant lacks probable cause due to admitted inaccuracies in the warrant application. (Dkt. Nos. 84; 94).

Deputy Granville testified that inaccuracies did exist in his warrant application. Granville's signed affidavit stated: "Your affiant had received information from a reliable confidential source […]." (Govt. Ex. 5). It also stated that "the confidential source(s) has

---

[10] The Government maintains that although it possessed probable cause to search the vehicle without a warrant under the automobile exception, out of an abundance of caution, a search of the vehicle did not occur until a warrant was obtained.

observed Hernandez transport and distribute narcotics while inside [the vehicle] on numerous occasions." (*Id.*). However, at the hearing Deputy Granville testified that he never communicated directly with the confidential source himself. He received the information relating to the confidential informant from Special Agent Middlebrooks, with whom he was working on this investigation. Deputy Granville explained that in making that statement he intended to refer to the knowledge of the investigative team. As to the second misstatement, Granville testified that he did not know the statement was inaccurate until the United States Attorney's Office informed him of that fact about a week before the hearing. The Government acknowledges that the confidential source did not actually observe defendant Hernandez transport and distribute narcotics while inside the vehicle on numerous occasions. However, Deputy Granville testified that at the time he drafted the warrant application he believed the confidential informant's statements to be true and accurate.

Defendant argues that based on material inaccuracies and the fact that Deputy Granville lacked personal knowledge about some of the information contained in the affidavit, the search warrant lacked probable cause. The Court does not agree. Although the warrant contained two erroneous statements, those statements were not material to the probable cause determination. A defendant challenging a warrant based on errors or inaccuracies must establish that any alleged falsehoods or omissions "were necessary to the issuing judge's probable cause finding." *See United States v. Lauria*, 70 F.4th 106, 125 (2d Cir. 2023). Defendant has not done so here. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant to support a finding of probable cause, no hearing is required." *Id.*

Here, if the Court excises the inaccurate statements, sufficient probable cause for the issuance of the warrant still exists. The positive K-9 alert alone provides probable cause for a search. *See Florida v. Harris*, 568 U.S. 237, 247 (2013) ("[A] court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").[11]

Further, even if the inaccurate statements were material to the probable cause determination, Deputy Granville's testimony demonstrated that the untrue statements were not "intentional or deliberate, or…made in reckless disregard for the truth." *Lauria*, 70 F.4th at 131; *see United States v. Hernandez*, 22-471, 2024 U.S. App. LEXIS 189, at *6-7 (2d Cir. Jan. 4, 2024) ("Importantly, [the officer] disclosed to the issuing magistrate judge all facts material to the warrant — the white BMW tip, the corroboration by an officer on-scene, and the positive drug alert from the K-9. Though the affidavit may have been 'poorly worded' and misstated peripheral details […], the record does not compel a finding of bad faith, especially because the magistrate judge who heard [the officer] testify and the district judge on further review credited [the officer's] explanation for the inconsistencies."). Thus, defendant has not met his burden under *Franks*.

The Court concludes that that probable cause existed for the issuance of the warrant and there is no basis to suppress evidence gained from the search defendant's vehicle. Accordingly, it is recommended that this motion to suppress be denied.

---

[11] Defendant had an opportunity to challenge the dog's reliability and to cross-examine the officer who conducted the K-9 search, but has offered no evidence to dispute these facts.

2. *Ping Warrant*

Defendant Hernandez moves to suppress evidence obtained from a "ping" warrant for the cell phone associated with the number (716) xxx-9154. (Dkt. No. 84, ¶¶ 10-17).[12] On April 27, 2023, one day before the traffic stop of defendants, the Government applied for and obtained a federal search warrant to obtain location data associated with this telephone number. The search warrant was granted by this Court on the same date. (*See* 23-mj-5099).

Defendant argues that the ping warrant was not supported by probable cause because of a lack of information about the credibility or reliability of the confidential source and because the warrant was made on the same day the confidential source was arrested on narcotics violations. (Dkt. No. 84, ¶¶ 10-17).[13] Defendant also argues that the Government failed to verify the actual owner of the subject telephone number before applying for the ping warrant. (*Id.*).

Applying the above standard of review, the Court has reviewed the search warrant, warrant application, and attachments and finds that probable cause existed for issuance of the warrant. The application was supported by the affidavit of Special Agent Middlebrooks. The application provided sufficient information regarding the suspected drug distribution activities of defendant. The application relied upon a recorded call between a confidential source and defendant Hernandez in which a sale of ketamine and

---

[12] As referenced above, defendant Hernandez's affidavit of standing alleges that the cell phone associated with this number belonged to him. (Dkt. No. 97, ¶¶ 9-10).

[13] Defendant Hernandez's request for the Government to provide certain dates and times that it has redacted in the ping warrant application is denied. (Dkt. No. 84, ¶¶ 30-33). Defendant argues that the chronology of the confidential source's arrest is relevant to the probable cause determination. The Court has reviewed the unredacted warrant application and finds the date the confidential source was arrested does not affect the probable cause finding.

fentanyl by defendant to the confidential source was discussed. This discussion also included defendant's plan to deliver the narcotics from New York City to Buffalo on April 28, 2023. Contrary to defendant's arguments, the recorded call between the confidential source and defendant provided a substantial basis for the probable cause finding. The credibility of this confidential source is plainly evident because the source was an individual known to law enforcement and recorded evidence allowed law enforcement to directly corroborate the relevant information.

Thus, the Court finds that the issuance of a warrant to obtain cell-site and other location data from the target telephone number was properly supported by probable cause. Accordingly, it is recommended that this motion to suppress be denied.

### 3. *Cell Phone Data Warrant*

Defendant Hernandez moves to suppress evidence obtained from a federal warrant to search the contents of four Apple iPhone cell phones which were recovered from defendant's Honda Odyssey vehicle. (Dkt. No. 84, ¶¶ 26-29). Defendant argues that the warrants lacked probable cause and that they were obtained unlawfully as fruit of the poisonous tree. (*Id.*). The challenged warrant was issued by United States Magistrate Judge H. Kenneth Schroeder, Jr. on May 12, 2023. (*See* 23-mj-64). The warrant application was made by Special Agent Middlebrooks and was supported by his own affidavit and attachments. (*Id.*).

Initially, defendant's claim that the cell phone data should be excluded from evidence as fruit of the poisonous tree is rejected. The Court has concluded that the traffic stop, as well as the search and seizure of the vehicle, were lawful. Thus, there is no

justification to suppress the resulting cell phone searches as unlawfully obtained derivative evidence.

Further, applying the above standard of review, the Court has reviewed the search warrant, warrant application, and attachments and finds that probable cause existed for issuance of the warrant. The application was supported by the affidavit of Special Agent Middlebrooks. It provided sufficient information regarding the investigation of defendant Hernandez for narcotics trafficking, including the recorded telephone call with the confidential source, location data obtained from the ping warrant, information about vehicles connected to Hernandez, details of the traffic stop, and the results of the vehicle search which revealed a plastic-wrapped object containing a mixture of heroin and fentanyl.

The Court concludes that that probable cause existed for the issuance of the warrant and there is no basis to suppress evidence gained from the search the subject cellular phones. Accordingly, it is recommended that this motion to suppress be denied.[14]

_Motion to Suppress Custodial Statements_

Defendant Sanchez Gonzalez moves to suppress statements he made to law enforcement which may be used against him at trial. (Dkt. No. 76-1, ¶ 21). Although

---

[14] Alternatively, defendants' motions to suppress each of these search warrants may also be denied based on the "good faith exception" established in _United States v. Leon_, 468 U.S. 897 (1984). Under _Leon_, evidence seized pursuant to a challenged warrant is not subject to suppression so long as law enforcement acted with objective and reasonable good faith, even if the judicial officer erred in finding probable cause. _Id._ at 922. Here, there is no evidence that any officer intended to mislead the any of the magistrates, and the Court finds that the law enforcement officers who executed the search warrants had a good faith basis to believe that the warrants were lawfully issued based upon a finding of probable cause. The warrant applications certainly were "not 'so lacking in indicia of probable cause' that it was unreasonable for the officers to rely upon" them. _United States v. Moore_, 968 F.2d 216, 222 (2d Cir. 1992) (quoting _Leon_, 468 U.S. at 923).

defendant's motion states that these statements "were taken involuntarily and without the assistance of counsel," (*id.*), defense counsel clarified at oral argument on April 9, 2025 that he challenges these statements only on the basis of fruit of the poisonous tree doctrine. Indeed, defendant has offered no factual basis for suppression of his statements. Further, because the Court has concluded that the traffic stop and subsequent events were lawful, there is no justification to suppress any resulting custodial statements as unlawfully obtained derivative evidence. Thus, it is recommended that defendant's motion to suppress his statements be denied.

## OMNIBUS DISCOVERY DEMANDS

### *Bill of Particulars*

Defendants move for a bill of particulars. (Dkt. No. 76-1, ¶ 4). They seek particularization as to, *inter alia*, the alleged members of the conspiracy, the date, place, details of formation of the conspiracy, details of conduct which established the conspiracy, and the identities of all unindicted co-conspirators. (*Id.*).

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In

determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (SDNY 1983). Further, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

Here, the Court finds that a bill of particulars is unnecessary because the specific allegations contained in the Indictment, together with the discovery already provided, are sufficiently clear. Contrary to defendants' belief, the Government is not required to particularize overt acts, unnamed co-conspirators, and other details regarding the alleged conspiracy. *See United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge[.]"); *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) ("The defendants are not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the [ ] enterprise and conspiracy.") (quoting *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993)).

The charges are neither complex nor difficult to understand. They allege that beginning in April 2023 until April 28, 2023 defendants engaged in a conspiracy to distribute controlled substances and that they possessed with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin. Further, the Government submits that it has already provided significant discovery to the defendants, including documents and recordings, in addition to the charges of the Indictment. The Government objects that defendants have not offered any specific facts or reasons to justify a finding that further particularization is necessary.

Defendants are not permitted to use a bill of particulars to learn evidentiary detail or the Government's legal theory. The Indictment plainly allows defendants to identify the charges against them, avoid surprise at trial, and interpose a plea of double jeopardy if necessary. For these reasons, defendants' request for a bill of particulars is denied.

### Rule 16 Discovery and Rule 12 Notice

Defendants move for discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure. (Dkt. Nos. 75, ¶¶ 30-33; 76-1, ¶ 5). Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Defendants acknowledge that they have already received voluntary discovery from the Government but they make additional requests for any Rule 16 discovery not already turned over. Defendants specifically request search warrant applications, post-arrest

statements, and K-9 search records. In response, the Government states that it has fully complied with its obligations under Rule 16. (Dkt. Nos. 77, pgs. 6-9; 78, pgs. 7-10). The Government affirms that it has already provided defendants with substantial voluntary discovery, including providing access to a post-arrest interview recording, and that it will continue to provide any additional discoverable materials that become available. The Court's decisions regarding the requested production of search warrant applications is discussed above.

Based upon the representations made by the Government, defendants' requests for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

Defendants also move for notice of intention to use evidence against defendant at trial pursuant to Rule 12 of the Federal Rules of Criminal Procedure. The Government has provided notice that it intends to use all items defendants have been provided with or made aware of in accordance with Rule 12(b)(4)(A). Therefore, this branch of defendants' discovery motions are also denied as moot.

### <u>Motion to Compel Disclosure of Brady/Giglio Material</u>

Defendants move for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady, Giglio* and their progeny.[15] (Dkt. Nos. 75, ¶¶ 46-51; 76-1, ¶ 25). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady*

---

[15] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

evidence in time for its effective use, the Government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

The Government submits that it is mindful of its obligations under *Brady* and its progeny. (Dkt. Nos. 77, pgs. 13-15; 78, pgs. 10-12). The Government states that it will disclose any exculpatory information, if and when it becomes aware of it. The Government agrees to provide impeachment material, namely, promises of leniency or immunity agreements with witnesses, criminal records of witnesses, immoral or criminal acts committed by witnesses, and prior inconsistent statements, prior to the commencement of trial and when the Government produces *Jencks Act* material.

Given the Government's representations and agreement to produce the above-described evidence, defendants' motions to compel the production of *Brady/Giglio* material is denied are moot. Consistent with *Coppa*, the Government is reminded of its continuing obligation to timely disclose any *Brady* and *Giglio* material to defendants.

### *Early Disclosure of Witness Statements and Jencks Act Material*

Defendants move for early disclosure of witness names and statements prior to trial. (Dkt. Nos. 75, ¶¶ 44-45, 57-59; 76-1, ¶ 22-24). The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the Government, on motion of defendant, disclose a Government witness's prior statements that are in the Government's possession and relate to the subject matter of the witness's direct testimony. *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or

approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government indicates that it will disclose all 3500 material one week prior to the commencement of the trial, or otherwise in accordance with the District Court's pre-trial order. (Dkt. Nos. 77, pg. 13; 78, pg. 14). In light of these representations, defendants' requests for early disclosure of Jencks Act material are denied as moot.

### *Rules 404(b), 608, and 609 Evidence*

Defendants move for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. Nos. 75, ¶¶ 52-56; 76-1, ¶ 29-30). Defendants also move for pre-trial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 607, 608, and 609. The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). (Dkt. Nos. 77, pgs. 16-17; 78, pgs. 12-14). It further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 but states it will provide notice at the time it is ordered to do so by the trial court. The Government has preliminarily notified defendants that it intends to use all prior criminal conduct, acts, or wrongs pursuant to Rule 404(b). The Government further states that should it become aware of additional Rule 404(b), Rule 608, or Rule 609 evidence, it will notify defendants in advance of trial.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pre-trial notice requirement. Based upon the Government's representation that it will disclose bad act or impeachment evidence prior to trial, defendants' motions are denied as moot. The Court instructs that any disclosures should be done in accordance with the District Court's pre-trial order. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608, and 609 is left to the determination of the District Court at the time of trial.

### Bruton Request

Defendants make a request under *Bruton v. United States*, 391 U.S. 123 (1968) for an order requiring the Government to redact any portions of any oral or written statements or confessions by any non-testifying co-defendants or co-conspirators that the Government intends to introduce at trial that may tend to inculpate defendant. (Dkt. No. 75, ¶¶ 4-8). As a general rule, this type of motion is best considered by the trial judge. *United States v. Anguiera*, 11-CR-116, 2012 U.S. Dist. LEXIS 51862 (W.D.N.Y. April 12, 2012) ("[T]he relief sought for excluding non-testifying co-conspirator statements...[i]s better considered by the District Judge prior to trial and deferred for that consideration"). For this reason, defendants' request is denied without prejudice to renew this motion before the District Court.

### Disclosure of Identity of Informants

Defendants move for disclosure of the identities of all informants used by the Government in the course of its investigation.  (Dkt. Nos. 75, ¶¶ 9-29). Defendants also

seek potential impeachment material as to these individuals. (*Id.*) The Government objects to this request on the grounds that defendants have not shown a particularized need for this information. (Dkt. No. 78, pgs. 4-7).

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Roviaro v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendants have not provided any specific reasons as to why informant identities are material or necessary to their defense. They do not offer an explanation of what the informants might testify about, nor do they establish its relevance to the crimes charged here. Instead, defendants make general statements that disclosure of informant information is necessary for the preparation of their defenses for trial. This is insufficient

to meet the burden. If and when an informant is to be called as witnesses at trial, defendants will have access to his or her identity as well as all relevant impeachment material, prior statements, and notes of their interviews. In addition, if an informant reveals exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial. Thus, defendants' motion for disclosure of informant identities is denied.

### Preservation of Rough Notes

Defendants move for an order requiring all federal, state or local agents and officers to retain and preserve all rough notes taken in the course of the investigation. (Dkt. No. 75, ¶¶ 60-62). The defendants further request that the Government preserve notes made by Government witnesses, including all Government agents and officers, in the event they later become discoverable. (*Id.*). The Government maintains that it will endeavor to maintain these materials, should they exist, and states that the FBI has a policy of preserving notes that are incorporated into reports and has already notified federal and local law enforcement officers who have been involved in this investigation to preserve their notes. (Dkt. No. 78, pg. 14). The Court grants defendants' motion and the Government is directed to preserve all rough notes and items of evidence acquired in this investigation.

### Voir Dire of Government Experts

Defendants move for permission to *voir dire* any proposed government experts outside the presence of the jury. (Dkt. No. 75, ¶¶ 63-68). The Government states that the District Judge is better suited to address this request. The Court agrees that the District

Judge who will preside over the trial of this case is best equipped to address this motion. Thus, the motion is denied without prejudice to renewal before the District Court.

*Audibility Hearing*

Defendants move for the right to ask the Court to hold an audibility hearing for any recordings the Government seeks to introduce at trial. (Dkt. No. 75, ¶¶ 72-73). The Government agrees that an audibility hearing is appropriate if the parties cannot resolve any questions of tape audibility. (Dkt. No. 78, pg. 16). However, this motion is premature and is reserved for pretrial determination by the District Court. *See United States v. Columbo*, 04-CR-273, 2006 U.S. Dist. LEXIS 49255, at *55-56 (S.D.N.Y. 2006) ("Once the Government has designated the tapes it intends to use at trial, defendants should identify any specific audibility issues and bring them to the Court's attention promptly.")

*Conspiracy Hearing*

Defendants move for a pretrial hearing and limitation of statements attributable to alleged co-conspirators which the Government intends to introduce at trial pursuant to Federal Rules of Evidence 104 and 801(d)(2)(E). (Dkt. No. 75, ¶ 74). This request to determine the admissibility of evidence is premature and the denial of the request at this time will not prejudice defendants. *See United States v. Henry*, 861 F.Supp. 1190, 1196-97 (S.D.N.Y. 1994). Thus, the Court denies the motion without prejudice to renewal before the District Court.

*Joinder of Motions*

Defendant Sanchez Gonzalez has moved to join in the pre-trial motions of defendant Hernandez. (Dkt. No. 76-1, ¶ 31). The request for joinder is granted with the further directive and findings that the decisions made by this Court as to each defendant's

motions shall also be deemed a finding and order as to the other defendant in this case, to the extent relevant or otherwise specified herein.

### Leave to File Additional Motions

Defendants also move to preserve their right to make further and additional motions. (Dkt. Nos. 75, ¶ 75; 76-1, ¶¶ 32-33). To the extent defendants intend to bring motions based upon new rulings, information or evidence, their requests for leave to file additional motions are granted. To the extent defendants intend to bring motions concerning issues that could have been raised prior to the previous motion deadline, the requests are denied without prejudice to bringing the motion upon a showing of good cause for the untimely filing.

### Government's Requests for Reciprocal Discovery

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendants intend to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. Nos. 77, pgs. 18-19; 78, pgs. 16-17). The Government's motions for reciprocal discovery are granted, and defendants are reminded that their disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendants' motions to suppress be denied. (Dkt. Nos. 75; 76; 84). It is ordered that defendants' omnibus discovery demands and the Government's reciprocal discovery demands are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendations portion of this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation, and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988)*.*

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which

objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**


      **SO ORDERED**.

    Dated:  October _____9_____, 2025
            Buffalo, New York

                                         MICHAEL J. ROEMER
                                         United States Magistrate Judge